Marcus Hackerman v. Commissioner.
Hackerman v. Commissioner
Docket No. 37113.
United States Tax Court
T.C. Memo 1954-45; 1954 Tax Ct. Memo LEXIS 201; 13 T.C.M. (CCH) 479; T.C.M. (RIA) 54151; May 20, 1954, Filed *201 1. Petitioner operated a numbers lottery in the taxable years 1946 and 1947. Petitioner's records grossly overstated the amounts paid out on winning numbers. Held, petitioner failed to carry his burden of proof and respondent's determination is sustained. 2. Held, petitioner proved that he suffered a deductible capital loss on the sale of 300 shares of stock in 1947. Theodore Hudson, Esq., Stallman Building, Nashville, Tenn., and Llewellyn A. Luce, Esq., for the petitioner. Homer F. Benson, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioner's income tax of $5,965.22 and $7,782.12 for the taxable years 1946 and 1947, respectively. The issues for determination are whether petitioner's business income exceeded the amounts reported *202 in 1946 and 1947, and whether respondent was correct in disallowing petitioner a capital loss of $1,000 on the sale of stock in 1947. Findings of Fact During the taxable years 1946 and 1947 petitioner was a resident of Nashville, Tennessee, and filed his income tax returns with the collector of internal revenue for the district of Tennessee. Petitioner was a numbers broker in Nashville, Tennessee, in the taxable years involved. The business was operated in the following manner. A bettor would place his bet upon any number between 000 and 999 with a numbers writer. He was allowed to bet on any one number in any amount not exceeding one dollar. Each day there were two winning numbers. The morning number was taken from the results of the Chicago Butter and Egg Exchange and the afternoon number from the amount of total sales on the New York Stock Exchange. If a bettor picked the winning number, he received 500 times the amount bet. The writer would give to the bettor a ticket upon which were written the number chosen and the amount bet. The writer made two carbon copies of the ticket. He turned over one of the copies to the pick-up man, together with the amount bet less 30 per *203 cent of which the writer retained as his commission. The pick-up man would then turn the tickets and money over to a broker such as petitioner. The pick-up man retained 7 per cent of the total amount bet or 10 per cent of the amount he received from the writer as his commission. The broker received 63 per cent of the total amount bet and furnished the money for the pay-off on all winning numbers. In the years 1946 and 1947 betwen 20 and 25 pick-up men normally turned their tickets over to petitioner. Petitioner would accept tickets on the morning number up until 8 a.m. and tickets on the afternoon number up until 2 p.m. Petitioner furnished the pick-up men with the ticket books used for betting. Both petitioner's books and tax returns disclose that petitioner received from the pick-up men $532,136.66 in 1946 and $545,097.10 in 1947. These figures represent the total amount bet in those years less the commissions deducted by the writers and pick-up men. He paid as wages to his employees $10,850 in 1946 and $8,550 in 1947. His total rent for each year was $480, and the books of tickets which petitioner furnished the pick-up men cost $805 in 1946 and $1,185 in 1947. According to the *204 daily account which was kept by petitioner, he paid out on winning numbers $513,636.66 or 60.81 per cent of the total amount bet in 1946, and $529,877.10 or 61.24 per cent of the total amount bet in 1947. Petitioner's lottery business was based upon the premise that approximately 50 per cent of the total amount bet would be paid out on winning numbers. Fifty per cent of the total amount bet, as shown by petitioner's books, was $422,330.62 in 1946 and $432,616.74 in 1947. There is no indication that petitioner incurred any business expenses other than those named. The original betting tickets were destroyed by petitioner every few days as the numbers business is illegal in the State of Tennessee. The only records retained by petitioner were two small ledger books showing what purports to be a daily tabulation of the total amount received from the pick-up men, the total amount paid out on winning numbers, and the amounts paid out for rent and ticket books. The amount of wages paid is shown by withholding tax records kept by petitioner's accountant. According to petitioner's books, the difference between the amount received and the amount paid out on winning numbers was always an *205 even number of dollars and often an even number of hundreds of dollars. The figures purportedly representing the amounts received and paid out each day always included an odd number of cents, which were the same for both the amounts paid out and the amounts received. On February 27, 1948, petitioner's place of business was raided by the police and the betting tickets for the day were confiscated. The confiscated tickets revealed bets for the day totaling $3,374.75. Petitioner's business was operated approximately 240 days per year. The business was operated in the same manner in 1948 as it was in 1946 and 1947. Respondent determined that petitioner's income from business was $22,560 in 1946 and $24,720 in 1947. Petitioner, on his income tax returns, reported income from his numbers business of $7,517 in 1946 and $5,005 in 1947. If the total amount paid out by petitioner on winning tickets was 50 per cent of the total amount bet, which is in accordance with the odds, his business income was $97,671.04 in 1946 and $102,265.36 in 1947. Petitioner's books do not adequately or accurately reflect petitioner's income for the years 1946 and 1947. Petitioner failed to report the income *206 received from his numbers lottery business for each of the taxable years 1946 and 1947 by not less than the amounts determined by the respondent in the notice of deficiency from which this appeal was taken. Petitioner purchased on October 15, 1946, through J. C. Bradford & Co. of Nashville, Tennessee, 300 shares of Distillers Corp. - Seagrams Ltd. stock for $5,601.89. He sold said stock through the same firm on February 27, 1947, for $4,553.81. Opinion Respondent's determination of petitioner's income from his lottery business is prima facie correct. To overcome the presumption arising from respondent's determination, petitioner relies upon a daily record which he kept purportedly showing the total amount received each day, the total amount paid out on winning tickets, and expenses. This record, consisting of two ledger books in which petitioner himself set down each day the total amount of his receipts for that day, the amounts purported to have been paid out by him on winning tickets for that day, and, as they occurred, expenses for rent and cost of ticket books furnished by him, was admitted by the Court over respondent's objection, for whatever weight it might be entitled *207 to receive upon final consideration of all the evidence by the Court. The basis of respondent's objection, renewed on brief, that the two books containing such daily records are not the best evidence, and petitioner having admitted that he voluntarily destroyed the numbers tickets brokeraged by him during the years involved to prevent their possible use as evidence against him for violation of the criminal laws of Tennessee, secondary evidence of their contents is not admissible. While we think much is to be said for respondent's contention that the voluntary destruction of an original writing by a proponent, for fraudulent purposes, may render secondary proof of the contents of such writing inadmissible (see ; ; ; ; Jones on Evidence (3rd Ed.) sec. 217; and Wigmore on Evidence (3rd Ed.) sec. 1198), we think it unnecessary to rule specifically on this question in view of our conclusion that petitioner's records of amounts paid out on winnings are entitled to no weight. *208 Respondent does not challenge the correctness of the amounts reported by petitioner as received and the amounts paid out for expenses. He contends, however, that the petitioner's records are grossly inaccurate with respect to amounts purportedly paid out on winning tickets. It is manifestly unbelievable that petitioner won or lost an even number of dollars, and often an even number of hundreds of dollars, each day for two years, as is shown by petitioner's records. It is likewise unbelievable, and indeed impossible, on the basis of the odds paid, 500 to 1, for the amounts paid out on winning tickets ever to have resulted in an odd number of cents. It is evident, therefore, that the amounts shown on petitioner's records to have been paid out each day on winning tickets is not correct, and the record contains no evidence explaining this situation. In the absence of any evidence explaining such inaccuracies, petitioner's records showing the amount paid out on winning tickets are entitled to no weight and, a fortiori, petitioner's contention that the amount paid by him on winning tickets was $513,636.66, or 60.81 per cent of the total amount bet in 1946, and $529,877.10, or 61.24 per *209 cent of the total amount bet in 1947, is not established. Accordingly, of necessity, we fall back on the theory, as testified to by petitioner, that on the basis of odds of 500 to 1 the ratio of winnings to total bets should be 50 per cent. On such basis it is obvious that petitioner failed to report the income received by him from his lottery business for each of the taxable years 1946 and 1947 by not less than the amounts determined by the respondent. If a taxpayer's "records are incomplete, inaccurate, or otherwise unsatisfactory" the Commissioner has authority to "seek information elsewhere to discover, assess, and collect the full tax liability imposed by law." , affd. (C.A. 2), , certiorari denied . In the instant case the only sum questioned was the amount allegedly paid out on winning numbers. Considering the known odds under which petitioner was operating his business respondent determined that the amount claimed was excessive. As petitioner's business income, computed upon the justifiable assumption that he paid out on winning tickets approximately 50 per cent of the total amount *210 bet, greatly exceeded his income as determined by respondent, the determination was neither arbitrary nor excessive. Cf. . Records which are manifestly and grossly inaccurate will not overcome the presumption that respondent's determination is correct. As petitioner relies solely upon such records to refute respondent's determination, there is a complete failure of proof. Therefore, respondent's determination must be sustained. ; . Respondent contends that petitioner has not proven that he sustained a capital loss in 1947 upon the sale of 300 shares of Distillers Corp. - Seagrams Ltd. stock. The confirmation slips issued by the brokerage firm through which the stock was purchased and sold were introduced in evidence. The confirmation slips prove petitioner's contention to be correct, and petitioner has carried his burden of disproving respondent's determination. Decision will be entered under Rule 50.